IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELLY MEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV-14-460-D |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative History and Medical Evidence

On April 1, 2010, Plaintiff protectively applied for disability insurance benefits, alleging that she became disabled on June 15, 2009. (TR 236, 284). Plaintiff was 45 years old at that time, she had a high school education, and she previously worked as a dry cleaning

1

counter clerk, delivery driver, housekeeper, loader/unloader, assistant manager in a convenience store, and fast food clerk. (TR 289-290, 306).

Plaintiff alleged she was disabled due to previous right carpal tunnel release surgery, previous cervical diskectomy surgery at three levels, headaches, dislocated shoulder, previous heart catheterization, and previous lumbar diskectomy surgery. (TR 288).

In June 2008, Plaintiff underwent left heart catheterization and arteriogram testing, which was interpreted by Dr. Bartolozzi as essentially normal. (TR 512). She was advised to take aspirin, stop smoking, exercise, and lose weight. In June 2009, Plaintiff's treating neurologist, Dr. Reddy, noted that her headaches were "under control" with prescribed medication. Dr. Reddy also noted that Plaintiff had right carpal tunnel syndrome and "fairly significant" spinal stenosis in her cervical spine with a "disc bulge" at one level. (TR 558).

An x-ray of Plaintiff's right shoulder conducted in July 2008 was interpreted as negative. (TR 501). In July 2009, Plaintiff sought treatment with a neurosurgeon, Dr. Pendleton, for back, neck, and shoulder pain and numbness in her left leg. (TR 431). She described a history of a "dislocated shoulder 10 years ago [on her] right side" and a previous heart catheterization procedure in 2008. (TR 431). She also complained of daily headaches and numbness in both hands. (TR 429).

Dr. Pendleton noted that EMG testing showed Plaintiff had right carpal tunnel syndrome and that MRI testing of her cervical and lumbar spines showed cervical stenosis with degenerative disk disease at multiple levels and in her lumbar spine with a single degenerated disk at L5-S1. (TR 429).

2

Plaintiff underwent surgical release of her right carpal tunnel syndrome in August 2009. (TR 428). Dr. Pendleton advised Plaintiff's family physician by letter in August 2009 that following her carpal tunnel release surgery Plaintiff was "doing better with less numbness" and she had good strength in her right hand. She was undergoing steroid injections in her cervical and lumbar spines. (TR 427).

Plaintiff reported that the injections were not helpful, and Plaintiff underwent a three-level cervical diskectomy and fusion operation conducted by Dr. Pendleton on September 24, 2009. (TR 422-426). Following this operation, Plaintiff reported her neck pain and headaches were greatly improved. (TR 421).

Plaintiff underwent a one-level lumbar diskectomy and fusion conducted by Dr. Pendleton in November 2009. (TR 418-420). In December 2009, Plaintiff underwent a second lumbar operation with placement of pedicle screws at the L5-S1 level of her spine. (TR 410-412). In a follow-up examination in December 2009, Dr. Pendleton noted that Plaintiff did not exhibit focal motor weakness, and x-rays of her neck and lower back showed good position of the grafts and instrumentation. (TR 409). Lyrica® was prescribed for her subjective complaint of radicular pain in her left leg. (TR 409).

In December 2009, Plaintiff was examined by Dr. Schultz in consultation for Dr. Pendleton. (TR 554-555). Dr. Schultz noted that Plaintiff's diagnoses included chronic migraine headaches that were stable, depression that was stable, and gastrointestinal reflux disease that was stable, in addition to chronic degenerative joint disease and lumbar radiculopathy. (TR 554). Dr. Schultz also noted that Plaintiff was "doing very well"

3

following her spinal operations and her pain was "well controlled." (TR 554).

In January 2010, Plaintiff returned to Dr. Pendleton complaining of low back and leg pain, and Dr. Pendleton prescribed narcotic pain medication to take as needed for her subjective pain complaints. She declined further radiological testing because of lack of finances. (TR 408).

In April 2010, Plaintiff sought follow-up treatment with Dr. Schultz, who noted that Plaintiff complained of continuing back and lower extremity pain. She stated her headaches had returned and that she had stopped taking her prescribed headache medication. (TR 544) Dr. Schultz prescribed medication for her headaches.

On June 1, 2010, Plaintiff underwent a consultative physical examination for the agency conducted by Dr. Nodine. (TR 440-447). Plaintiff reported that the previous cervical diskectomy helped her migraine headaches and neck pain, and that she had headaches only about once a week. Plaintiff stated muscle relaxant medication also helped with her neck pain, which she stated occurred two to three times per week. Plaintiff stated that she continued to have low back pain and that the hardware implanted in her previous lumbar fusion operation had "shifted and impinged on nerves in her back," causing radiating pain and numbness from her lumbar spine to her toes, but this pain only occurred about two times a day and lasted approximately 10 minutes. (TR 440). The pain and numbness were relieved by sitting down and elevating her lower extremities. (TR 440). Dr. Nodine noted Plaintiff did not mention mental health problems. (TR 441). On examination, Plaintiff exhibited normal strength and decreased range of motion with pain in her cervical and lumbar spines.

4

She walked with a normal and steady gait without using an assistive device, although her gait was "slightly slowed." (TR 442).

In August and September 2010, Dr. Schultz prescribed medication for iron-deficiency anemia, and Plaintiff was treated for a sore throat. (TR 539-543). There is a diagnostic impression in Dr. Schultz's office notes in September 2010 of "[c]hronic active hepatitis C" viral infection, but no indication of treatment for this condition. (TR 532).

Plaintiff underwent gastrointestinal and colonoscopy testing in September 2010 conducted by Dr. Schultz, who diagnosed Plaintiff with a hiatal hernia, antral gastritis, simple internal hemorrhoids, and mild left-sided diverticulosis. (TR 481). In December 2010, Dr. Schultz prescribed pain medications for Plaintiff's complaint she was "[c]onstantly hurting." (TR 584-585).

In March 2011, Plaintiff sought treatment from Dr. Schultz for "dizzy spell[s]" occurring 3 to 4 times a week and insomnia. (TR 582). Medications were prescribed. In April 2011 and June 2011, medications were prescribed for Plaintiff's complaint of migraine headaches. (TR 577, 581). In August 2011, Dr. Schultz noted Plaintiff was experiencing "situational anxiety" due to family problems and that Plaintiff had recently sought treatment at a hospital for chest pain, although a cardiac work-up was negative. (TR 589-590).

A CT scan of Plaintiff's cervical spine conduced in January 2012 was interpreted as showing possible incomplete fusion. (TR 601).

In February 2012, Plaintiff was hospitalized for two days after she reportedly took an overdose of prescribed medication after her husband requested a divorce. (TR 591). Her

treating clinician, Dr. Hake, noted a diagnosis of major depressive disorder and partner relational problems. (TR 613). Dr. Hake noted that at the time of her discharge Plaintiff reportedly "regretted" taking the overdose, she had responded well to medications, her depression symptoms had resolved, and she denied suicidal intent or plan. (TR 613).

At a hearing conducted on August 17, 2011, before Administrative Law Judge Stults (TR 29-59) Plaintiff testified that her back and leg pain had worsened since her back operations. She took muscle relaxant medications, and she also took pain medications when necessary. She described neck pain occurring almost daily and migraine headaches occurring two to three times a week and lasting for various lengths of time from a couple of hours to "all day." (TR 39).

Plaintiff stated she could lift a gallon of milk but had pain in her lower back and hips with standing or sitting for long periods of time. Plaintiff stated she took anti-depressant medication but had not sought mental health treatment. She stated with regard to her depression that "[a]s long as I'm medicated I usually do fine." (TR 41). She described stress due to family issues. Plaintiff stated Dr. Schultz advised her not to work or do any lifting.

Plaintiff stated she took care of her personal needs, cooked meals, performed light household chores like dusting and laundry, played with her grandchildren, drove her car for short errands three to four times a week, cared for her pets, and occasionally attended church and went out for dinner. A vocational expert ("VE") also testified at the hearing, describing the exertional and skill requirements of Plaintiff's previous jobs and responding to hypothetical questioning concerning the availability of jobs.

II. ALJ's Decision

In a decision entered April 4, 2013, Administrative Law Judge Belcher ("ALJ") found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 15, 2009. Following the well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to "obesity, obstructive sleep apnea, chronic active hepatitis C, gastroesophageal reflux disease (GERD), chronic obstructive pulmonary disease (COPD), right carpal tunnel syndrome status-post release, migraine headaches, and discogenic and degenerative disorders of the spine status-post fusion with possible incomplete fusion." (TR 12).

At step three, the ALJ found that Plaintiff's impairments did not satisfy or medically equal a listed impairment and she was therefore not presumptively disabled under the agency's Listing of Impairments. At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level with the following additional exertional and nonexertional limitations:

> [T]he claimant . . . could stand/walk for up to two hours out of an eight-hour workday for up to 15 minutes at a time, could sit for six to eight hours in an eight-hour workday for up to 30 minutes at a time and would require change of position but not breaks. She could climb stairs, balance, bend or stoop occasionally. She could not kneel, crouch or crawl. She could not climb ladders, ropes and scaffolding. She could not reach above [her] head bilaterally. She could frequently finger, handle and feel with the right upper extremity. She must avoid concentrated exposure to fumes, odors, dusts, toxins, gases and poor ventilation. She must avoid all exposure to hazardous or fast machinery, unprotected heights and driving. She cannot work around bright lights (i.e. sunlight or bright lamps) on a

7

> regular basis and cannot work around loud noises. She can
> perform simple tasks and some complex tasks (up to 6 steps).
> She can have no intense interpersonal contact with co-workers
> or supervisors and can have superficial contact with the general
> public.

(TR 15). In response to hypothetical questioning as to the availability of jobs for an individual with this RFC for work and Plaintiff's vocational characteristics (age, education, and previous work history), the VE testified that such an individual could perform the jobs of food order clerk, clerical mailer, and charge account clerk. (TR 89-95). The ALJ relied on this testimony in finding at step five that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff requested review of the ALJ's decision and presented additional medical evidence. The Appeals Council denied Plaintiff's request for review (TR 1-4), and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be

based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

IV. Step Five - Consideration of Medical Opinion Evidence and Substantial Evidence

Plaintiff contends that there is not substantial evidence to support the Commissioner's step five decision. First, Plaintiff contends that the ALJ erred in failing to expressly consider the medical source statement provided by "Dr. Chester" and by failing to include the mental limitations set forth in this "treating" physician's opinion.

Plaintiff's argument misinterprets the record, which reflects that with her request for review of the ALJ's decision Plaintiff submitted additional medical evidence. This evidence included a Mental Medical Source Statement completed by Dr. Chesler, a physician at Northwest Center for Behavioral Health in Enid, Oklahoma, and dated February 11, 2013. (TR 4, 621-624). The evidence also included treatment notes for Plaintiff's treatment at

9

Northwest Center for Behavioral Health between March 8, 2012, and March 12, 2013. (TR 4, 625-636). None of these treatment notes bear Dr. Chesler's signature.

Plaintiff provides no explanation for her failure to submit this evidence prior to the ALJ's decision, and the ALJ did not err by failing to expressly consider the evidence because it was not submitted until Plaintiff sought review of the ALJ's decision before the Appeals Council. Nevertheless, the Appeals Council indicated it had reviewed the additional evidence presented by Plaintiff and found that the evidence did not provide a basis for changing the ALJ's decision. (TR 1-2).

When the Appeals Council considers new evidence and declines to review an ALJ's decision, the Appeals Council errs only when the new evidence provides a basis for changing the ALJ's decision. See O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994). In this case, the Appeals Council did not err in declining to review the ALJ's decision in light of the new evidence submitted by Plaintiff.

Assuming, as Plaintiff alleges, that Dr. Chesler was Plaintiff's treating physician, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted).

There are no treatment records from Dr. Chesler in the administrative record. Nor are

there any objective findings in the record that would support Dr. Chesler's medical opinion set forth in his Mental Medical Source Statement. Dr. Chesler opined in the Mental Medical Source Statement that Plaintiff's depressive disorder and adjustment disorder had resulted in marked or moderate limitations in almost all areas of work-related mental functional areas. The opinion is a checklist form that describes a "marked" limitation as one that "[s]eriously affects ability to perform basic work functions" and a "moderate" limitation as one that "[a]ffects but does not preclude ability to perform basic work functions." (TR 621).

Plaintiff's treatment records at Northwest Center for Behavioral Health reflect that she was prescribed medications for major depressive disorder, but the progress notes do not include findings of severe functional limitations or significant symptoms related to her mental impairment. In fact, the progress notes indicate Plaintiff's depression symptoms improved with medications. (TR 625, 628, 633). No error occurred with respect to the ALJ's or the Appeals Council's consideration of the opinion evidence.

Plaintiff next argues that the ALJ failed to include all of Plaintiff's "medical limitations" in posing hypothetical questions to the VE at the hearing. But Plaintiff does not point to any medical evidence in the record that would support additional limitations beyond those found by the ALJ in the step four RFC determination. If Plaintiff is referring to the limitations set forth in Dr. Chesler's Mental Medical Source Statement, that opinion is not supported by treatment records or other medical evidence in the record, and the ALJ did not err by failing to include any additional limitations drawn from Dr. Chesler's Mental Medical Source Statement in the RFC finding. Plaintiff's unsupported argument has no merit.

11

Finally, Plaintiff argues that the ALJ's step five decision is not supported by substantial evidence because "he did not inquire how [the physical RFC limitations] would affect the occupational base." Plaintiff's Opening Brief, at 13. The agency's guidelines recognize that when a claimant has nonexertional limitations resulting in "more than a slight impact on the individual's ability to perform the full range of sedentary work" the adjudicator cannot rely on the Medical-Vocational Guidelines to direct a finding of disability or nondisability. Saiz v. Barnhart, 392 F.3d 397, 400 (10th Cir. 2004). "In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." Social Security Ruling 83-12, 1983 WL 31253, *4 (1983). In this case, the ALJ properly solicited the testimony of a VE concerning the effects of Plaintiff's exertional and nonexertional limitations upon the remaining occupational base for sedentary work. The VE testified that three jobs would be available for an individual with Plaintiff's RFC for work. The VE's testimony provides substantial evidence to support the Commissioner's step five decision, and therefore the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ April 21st , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this

Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   1st   day of   April, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE